**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ADAM RANDOLPH POWELL,<br>Plaintiff,<br>v.<br>MOIRARA, et al.,<br>Defendants. | No. 2:23-cv-0875-DC-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendants' unopposed motion to dismiss. See ECF No. 46.

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The Court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the Court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

# I. BACKGROUND

## A. Procedural History

Plaintiff initiated this action with a pro se complaint filed on May 10, 2023. See ECF No. 1. On August 8, 2023, the Court issued an order screening the original complaint and granted Plaintiff an opportunity to file a first amended complaint addressing defects identified in the Court's order. See ECF No. 11. After Plaintiff declined to file a first amended complaint, the Court issued an order on November 2, 2023, finding service of the original complaint appropriate as to Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Moireira[1] and Lively arising from a January 22, 2022, incident at the California Medical Facility. See ECF No. 12. On January 12, 2024, the Court issued findings and recommendations that all other claims and defendants be dismissed. See ECF No. 17. The findings and recommendations were adopted in full by the District Judge on April 3, 2024. See ECF No. 23.

While the January 12, 2024, findings and recommendations were pending before the District Judge, Defendants Moreira and Lively filed a motion to dismiss on March 8, 2024. See ECF No. 21. The Court issued findings and recommendations addressing Defendants' motion to dismiss on September 23, 2024. See ECF No. 29. The Court agreed with Defendants that the complaint failed to state sufficient facts to show that they were aware of a substantial risk of serious harm. See id. at 5. More specifically, the Court held:

> Defendants argue "Plaintiff does not allege that Officer John Doe #1 spoke with Defendant Moreira in particular or what Officer John Doe #1 told Defendant Moreira. Thus, Plaintiff fails to allege that Defendant Moreira was aware of Plaintiff's suicide risk before Plaintiff swallowed pills." See ECF No. 21 at 9. That is, Defendants argue Plaintiff's allegations only speculate that Defendant Moreira was aware of Plaintiff's suicide risk. Further, Defendants argue "Plaintiff fails to allege that either Defendant was subjectively aware that Plaintiff had overdosed or otherwise was distressed as Plaintiff laid on his bed." See id. at 11. That is, Defendants argue Plaintiff's allegations do not plausibly assert Defendant Lively was aware of Plaintiff's suicide attempt as Plaintiff only saw Defendant Lively in passing after the event. See id. at 10. Nor does Plaintiff's assertion that Defendants were part of a group of officers that ignored Plaintiff after his overdose, demonstrate Defendants' individual awareness of Plaintiff's condition. See id. Thus, Defendants argue "Plaintiff cannot establish either Defendant's deliberate indifference based

---

[1] Defendant Moreira is erroneously sued as "Moirara."

> on their failure to respond to Plaintiff's overdose." See id. at 11.
>
> Plaintiff concedes that he can only speculate that Defendant Moreira was aware of Plaintiff's suicide risk based on his observation of John Doe #1's actions. See ECF No. 25 at 4. Plaintiff, however, alleges new facts in his opposition including that several inmates told Defendant Moreira that Plaintiff was suicidal (see id. at 4-5); Plaintiff was on "Close Custody," therefore requiring Defendant Moreira to account for Plaintiff's presence verbally (see id.); Defendant Moreira told Defendant Lively that Plaintiff was suicidal (see id. at 5); several pill bottles were in open view (see id.); Defendant Lively ordered John Doe #2 to stand watch at Plaintiff's door (see id.); and Defendants were aware that Plaintiff was upset about not being able to see his son (see id. at 5-6). Plaintiff argues that these new facts show Defendants were aware of Plaintiff's suicide risk and consciously decided to leave Plaintiff in harm's way. See id. at 8.
>
> Defendants' argument is persuasive. Considering the facts as plead, Plaintiff fails to allege sufficient facts that would establish a reasonable inference that Defendants subjectively knew of the risk. See Iqbal, 129 S. Ct. at 1949. Further, Plaintiff seems to admit as much in noting that, given his position in his cell and his latter unconscious state, Plaintiff was not privy to Defendants' communications or subjective awareness of Plaintiff's suicide risk. See ECF No. 25 at 4. Because Plaintiff merely speculates as to Defendants subjective awareness of that risk, Plaintiff failed [to] allege sufficient facts to state a claim that Defendants disregarded his suicide attempt. See Twombly, 550 U.S. at 555-556. Moreover, even if Defendants were subjectively aware of Plaintiff's suicide ideation, as currently pled, Plaintiff fails to allege sufficient facts to show Defendants disregarded this risk. That is, as currently pled, pleaded, officials took reasonable steps to respond to the risk by removing Plaintiff's window coverings and standing watch outside Plaintiff's door. See ECF No. 1 at 7; Farmer, 511 U.S. at 844. Accordingly, the undersigned recommends granting Defendant's motion to dismiss. However, given the possibility that Plaintiff's claims can be bolstered by alleging the new facts asserted in his opposition, Plaintiff should be provided an opportunity to amend.
>
> ECF No. 29, pgs. 6-8.

The findings and recommendations were adopted in full by the District Judge on November 8, 2024, and Plaintiff was directed to file a first amended complaint within 30 days. See ECF No. 31. As of January 16, 2025, Plaintiff had not filed a first amended complaint as directed and the Court issued findings and recommendations that this action be dismissed for lack of prosecution and failure to comply with court rules and orders. See ECF No. 32. Plaintiff did not file objections, and the findings and recommendations were adopted in full by the District Judge on April 4, 2025. See ECF No. 33. Final judgment was entered the same day. See ECF No. 34.

/ / /

On April 24, 2025, Plaintiff sought reconsideration and an order re-opening the case. See ECF No. 35. Plaintiff's motion was granted by the District Judge on August 8, 2025, and the matter was re-opened. See ECF No. 38. Plaintiff was directed to file a first amended complaint within 30 days of the date of the District Judge's order. See id. As of October 14, 2025, Plaintiff had again failed to file a first amended complaint as directed and the Court issued findings and recommendations that the action be dismissed for lack of prosecution. See ECF No. 39. Upon Plaintiff's objections and concurrent filing of a first amended complaint on November 10, 2025, the findings and recommendations were vacated on November 17, 2025. See ECF No. 43. Defendants responded to the first amended complaint with the pending unopposed motion to dismiss. See ECF No. 46.

**B. Plaintiff's Allegations**

This action proceeds on Plaintiff's first amended complaint filed on November 10, 2025. See ECF No. 42. Defendants Moreira and Lively are sued in their official and individual capacities. See id. at 12. Defendants outline Plaintiff's factual allegations as follows, which the Court accepts as the pending motion to dismiss is unopposed:

> A. Plaintiff Had an Outburst the Night Before He Swallowed Pills.
>
> On the night of January 21, 2022, Plaintiff was denied communication with his family and flipped over a medical cart and a water jug. (*Id.* at § D, Claim I, ¶ 3, ECF No. 42 at pp. 5-6.) Lively ordered Plaintiff to clean up before making a phone call. (*Id.* at p. 6.)
>
> B. Plaintiff Got Angry at Moreira Before He Swallowed Pills.
>
> On January 22, 2022, Plaintiff's scheduled video visit with his family was cancelled. (*Id.* at p. 5.) Moreira told Plaintiff the visit was cancelled even though Moreira also brought Plaintiff a PSR, [footnote omitted] which confirmed that Plaintiff's visit was allowed. (*Id.*) Plaintiff and Moreira argued back and forth about the denial of the visit. (*Id.*) Plaintiff requested Moreira's permission to call Plaintiff's family. (*Id.*) Moreira denied the request and walked away. (*Id.*) Plaintiff "was yelling and cussing at Moreira," which Moreira saw and heard. (*Id.*)

/ / /

/ / /

/ / /

### C. At Plaintiff's Request, the MAC Representative Told the Control Officer that Plaintiff Was Suicidal, and the Control Officer Acted Like He Spoke with Someone.

A few minutes later, Plaintiff was in his cell, anxious, depressed, and suicidal. (*Id.*) Plaintiff saw a Men's Advisory Council (MAC) representative and asked him to tell the control officer, Doe No. 1, that Plaintiff was suicidal, which the MAC representative did. (*Id.* at p. 6.) The control officer nodded his head, walked away, squatted down, "and acted like he spoke with someone." (*Id.*)

### D. Plaintiff Spoke with the MAC Representative Again.

After a few minutes, Plaintiff asked the MAC representative to tell the floor officers that he was suicidal. (*Id.*) The MAC representative said, "okay." (*Id.*)

### E. Plaintiff Blocked His Windows, Swallowed Pills, Hid, and Passed Out.

Plaintiff blocked his windows, waited ten-to-fifteen minutes, and swallowed approximately four bottles of pills. (*Id.* at p. 7.) Plaintiff hid under a sheet or multiple towels on his bed and, after five-to-fifteen minutes, passed out. (*Id.*)

### F. Other Inmates Yelled that Plaintiff Was Suicidal, Defendants and Other Staff Members Responded, and Plaintiff Was Breathing.

At an unspecified time, Plaintiff told his neighbor that he was going to swallow the pills. (*Id.* at p. 8.) Other inmates yelled that Plaintiff was suicidal and "swallowed a bunch of pills." (*Id.*) Moreira responded and called for assistance "for an unresponsive inmate at count time," and Lively and other staff members responded. (*Id.*) Lively ordered Plaintiff's cell door opened and removed Plaintiff's window blocker from the door. (*Id.*) Defendants saw Plaintiff breathing but not responding to Plaintiff's "calls [and] orders." (*Id.* at p. 8-10.)

### G. Plaintiff Woke Up Dry-Heaving and Was Taken to the Correctional Treatment Center.

One-to-two hours after swallowing pills, Plaintiff woke up dry-heaving. (*Id.* at p. 7.) Plaintiff went to his toilet and felt like vomiting, but he did not vomit. (*Id.*) A floor officer, Doe No. 2, stood at Plaintiff's door. (*Id.*) Plaintiff asked for medical care because he swallowed pills. (*Id.* at pp. 7-8.) The floor officer searched Plaintiff and escorted him to the Correctional Treatment Center (CTC). (*Id.* at p 8.) Plaintiff was "blacking in and out" and vomited multiple times. (*Id.*) At the CTC, Plaintiff passed out again. (*Id.*) Plaintiff vomited for five-to-seven hours. (*Id.* at p. 10.)

/ / /

/ / /

/ / /

> H. Plaintiff's Alleged Injuries.
>
> As a result of swallowing pills, Plaintiff had physical pain, including headaches and stomach pain and cramps for six-to-seven days, was lightheaded and nauseated for two-to-three days, and felt emotional distress. (*Id.* at § D, Claim I, ¶ 4, ECF No. 42 at p. 10.)
>
> I. Prison Staff's Duties Under Prison Rules.
>
> Plaintiff is in close custody, which requires that staff check with him visually and verbally every day at noon. (*Id.* at § D, Claim I, ¶ 3, ECF No. 42 at p. 7.) Additionally, "[u]nresponsive/[n]on-[r]esponsive inmates constitute [a] [m]edical emergency requiring a[n] immediate extraction per [T]itle 15 and [D.O.M.] 51020.12.2." (*Id.* at ¶ 5.)
>
> ECF No. 46, pgs. 10-12.

Plaintiff seeks unspecified compensatory damages, nominal damages, and punitive damages of $500,000.00 from each Defendant. See ECF No. 42, pg. 12. Plaintiff further requests the Court order lifetime medical treatment for his alleged injuries, a reduction in Defendants' pay for one year with proceeds donated to a suicide awareness and prevention program, and demotions for each defendant by one rank. See id.

## II. DISCUSSION

Defendants argue that the first amended complaint continues to fail to allege facts sufficient to show deliberate indifference. See ECF No. 46, pgs. 17-24. Defendants also argue that they are immune from damages to the extent they are sued in the official capacities, and that the Court lacks jurisdiction over Plaintiff's claims for injunctive relief. See id. at 15-17. For the reasons discussed below, the Court finds Defendants' first argument to be dispositive.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with

"food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Under these principles, prison officials have a duty to take reasonable steps to safeguard an inmate's safety. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. See Farmer, 511 U.S. at 844.

"'A heightened suicide risk or an attempted suicide is a serious medical need[]' for Eighth Amendment purposes." Garrett v. Grant, 2018 WL 3533459, at *4 (C.D. Cal. July 18, 2018) (quoting Conn v. City of Reno, 591 F.3d 1081, 1095 (9th Cir. 2009)), judgment vacated on other grounds, 563 U.S. 915 (2011), and opinion reinstated in relevant part, 658 F.3d 897 (9th Cir. 2011) (brackets in original). However, "[t]o show deliberate indifference in prison suicide cases, a plaintiff must allege that a specific defendant actually knew the inmate was 'in substantial danger' of '*imminent* suicide' and deliberately failed to take reasonable precautionary

measures." Garrett, at *5 (quoting Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1018 (9th Cir. 2010)).

Defendants argue that the facts alleged fail to show they were deliberately indifferent to Plaintiff's medical situation, either before or after he swallowed pills. See ECF No. 46, pgs. 18-24. Specifically, Defendants contend that Plaintiff fails to allege facts to show that they knew Plaintiff was suicidal, either before or after he swallowed pills. See id. The Court agrees.

As Defendants note, while Plaintiff claims that Defendant Lively learned that Plaintiff was upset about being prevented from seeing his family before he swallowed pills, and while Plaintiff claims that earlier, on the same day Plaintiff swallowed pills, Plaintiff became angry at Defendant Moreira for denying Plaintiff's request to call family members, these allegations do not show that either Defendant knew that Plaintiff was suicidal before he swallowed pills. Similarly, while Plaintiff alleges that the MAC representative told an unnamed control officer that Plaintiff was suicidal, after which the control officer nodded his head, walked away, and squatted down as if he was speaking with someone, this allegation provides nothing more than speculation that either Defendant was made aware at the time of Plaintiff's suicidal ideation. Thus, Plaintiff has failed to allege facts showing that Defendants had knowledge of a risk to Plaintiff's safety *before* he swallowed pills. See Farmer, 511 U.S. at 837.

The facts alleged do, however, indicate that, once Defendants were made aware that Plaintiff had swallowed pills in an attempt to commit suicide, they acted reasonably. Plaintiff specifically alleges that both defendants responded to other inmates' calls that Plaintiff had swallowed pills and was unresponsive. Defendant Moreira called for assistance and Defendant Lively ordered Plaintiff cell door opened and removed material Plaintiff had used to block the cell window. Both defendants observed that Plaintiff was breathing. Later that same day, Plaintiff woke up dry-heaving and was escorted by a floor officer to the medical clinic. Therefore, based on Plaintiff's allegations, even if Defendants were aware of a risk to Plaintiff's safety before he swallowed pills, his claims are foreclosed by Plaintiff's allegations that Defendants reasonably responded to the incident. See id. at 844.

## III. CONCLUSION

Based on the foregoing, the undersigned recommends that Defendants' unopposed motion to dismiss, ECF No. 46, be GRANTED and that this matter be DISMISSED without further leave to amend and with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 20, 2026

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE